Rose Publicker v. Commissioner.
Publicker v. Commissioner
Docket No. 28356.
United States Tax Court
1952 Tax Ct. Memo LEXIS 206; 11 T.C.M. (CCH) 519; T.C.M. (RIA) 52163; May 26, 1952
Earl Jay Gratz, Esq., for the petitioner. Charles J. Hickey, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves gift tax deficiencies for 1946 and 1947 in the respective amounts of $13,875 and $43,162.50. The only question in issue is the value at the date of the gifts of several pieces of diamond jewelry which petitioner gave to her daughter in 1946 and 1947. Findings of Fact Petitioner is a resident of Philadelphia, Pennsylvania. She filed gift tax returns for 1946 and 1947 with the collector for the first district of Pennsylvania. In her 1946 return she reported, among others, a gift to her daughter, Helen P. Neuman, of a diamond ring valued at $50,000. Respondent determined that the ring had a value at the date of the gift of $100,000. *207 In her 1947 return petitioner reported gifts to the same donee of another diamond ring valued at $115,000 and a pair of diamond ear clips valued at $6,000. Respondent determined that the gifts had a value of $240,000. The subject matter of the 1946 gift was a marquise-cut diamond of 20.5 carats in an iridium platinum setting with two tapered, bullet shaped diamonds. The donor purchased the ring April 9, 1941, from Joseph Milner of the firm of The House of Milner, wholesale and retail diamond merchants of Philadelphia, for $45,000. She paid a ten per cent Federal excise tax on the purchase. She reported the gift in her 1946 gift tax return at a value of $50,000. Respondent determined in his deficiency notice that the ring had a value at the date of the gift of $100,000. The fair market value of the 1946 gift was $58,500. The 1947 gifts were an emerald-cut diamond weighing 33.5 carats in a ring mounting and a pair of marquise-cut diamond ear clips of.56 carat. The ring and ear clips were purchased by the donor from Harry Winston, Inc., New York, New York, February 5, 1947, for $200,000, plus 20 per cent, $40,000, Federal excise tax. Respondent valued the gifts in his deficiency *208 notice at $240,000. The value of the 1947 gifts were not less than $240,000. Opinion LEMIRE, Judge: Aside from their wide difference of views on the actual sale value of the diamonds, based on the testimony of their expert witnesses, the parties are in further disagreement as to whether the values now in question are the wholesale or the retail values of the diamonds and whether the excise tax paid on the purchases by the donor is or is not to be taken into consideration in determining value. The gift tax under section 1005, Internal Revenue Code, is levied on the value of the property at the date of the gift. This value has been accepted generally as meaning the fair market value, which, as stated in respondent's Regulations 108, section 86.19, is "the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell." Whether this value is to be determined in relation to the wholesale or to the retail market depends upon the nature of the commodity and the trade practices under which it is customarily bought and sold. There was testimony by petitioner's expert witnesses *209 that no actual retail market exists for "gem" diamonds of the weight and quality of those under consideration, and that there is a very limited trade in such diamonds. It was not shown, however, that there is any more of an established wholesale market than there is a retail market. Every dealer making a purchase of such a diamond would, of course, expect to sell it at a profit. That sale might be either to another merchant or to a consumer. The testimony of the expert witnesses was to the effect that this profit amounts to from about ten per cent to whatever the customer can be induced to pay. It is not unlikely that any satisfactory sale of the diamonds under consideration by either the donor or the donee at about the time of the gifts would have had to be negotiated through an established dealer or commissioned merchant who would have charged the seller a fee or commission for his services. We held in Estate of Frank Miller Gould, 14 T.C. 414, that the value of a diamond ring for gift tax purposes was the price the donor paid for it to a retail jeweler a few days before the gift, inclusive of the excise tax which the purchaser paid. The controversy there centered, *210 apparently, upon whether the excise tax should be included in determining value; for it is stated in the opinion that the facts were stipulated, and that "The only evidence of value submitted in the record is the circumstances of the arm's length sale and purchase which took place about one week prior to the date of the gift." As a basis for a possible distinction of the instant case from the Gould case, supra, we do have here considerable other evidence than the mere circumstances of the sales. We have the testimony of four expert witnesses, three for the petitioner and one for the respondent, all of whom we deem well qualified. One of petitioner's witnesses placed a value of $46,650 on the 1946 gift and a value of $114,500 on the 1947 gifts. A second witness for petitioner valued the 1946 gift at about the same amount and the 1947 gifts at $78,590. Petitioner's third witness placed values of $51,250 on the 1946 gift and $122,000 on the 1947 gifts. These values were all said to be wholesale values, the amounts which a dealer would have been willing to pay, and were exclusive of any Federal excise tax. Respondent's witness placed a value of $90,000 on the 1946 gift and a value of *211 $201,000 on the 1947 gifts, exclusive of Federal excise taxes. Petitioner's witnesses are all well-established diamond merchants. Respondent's witness is not a dealer but he has had considerable experience as an appraiser of diamonds such as those under consideration. We have found it impossible to reconcile the testimony of the various expert witnesses. Even with allowance for the difference between the so-called wholesale and retail prices and the Federal excise taxes, there is still a wide difference between their conclusions. Nor do we think that their testimony, taken as a whole, affords a better measure of the value of the gifts than the prices which the donor actually paid for the property in the open market, with the adjustments indicated. Petitioner does not claim that she was defrauded in the purchase of the diamonds from Harry Winston, Inc., in 1947, and in this proceeding there is no evidence of fraud or deceit in connection with the transaction. Following our decision in Estate of Frank Miller Gould, supra, and bearing in mind that the 1947 gifts were made approximately five months after the donor had purchased the diamonds for $240,000, including the excise *212 taxes, we hold, and have found above, that the value of these gifts on the date thereof was not less than $240,000, the value determined by the respondent in his deficiency notice. The evidence does not show that there was any material change in the value of diamonds over the five months' period between the date of purchase by the donor and the date of the gifts. As to the 1946 gift the situation is somewhat different. The donor purchased the ring in 1941 for $45,000, plus excise taxes of $4,500. One of petitioner's witnesses testified that there was an increase in the value of large diamonds in the neighborhood of 20 per cent between 1941 and 1946 when the gift was made. This would give the ring a value at the date of the gift based on cost to the donor ( Estate of Frank Miller Gould, supra) of $58,500; that is, cost, $45,000, plus 20 per cent appreciation in value, $9,000, plus the $4,500 excise tax. We, therefore, hold, as found above, that the value of the 1946 gift was $58,500. Decision will be entered under Rule 50.